```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF INDIANA
                   FORT WAYNE DIVISION
```

| | |
|---|---|
| RUDELL PETTIFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    NO. 1:13-CV-320 |
| | ) |
| MARION POLICE DEPARTMENT, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on the complaint filed by Rudell Pettiford, a *pro se* prisoner, on November 4, 2013. For the reasons set forth below, this case is **DISMISSED** pursuant to 28 U.S.C. § 1915A.

BACKGROUND

On May 20, 2013, Rudell Pettiford was arrested in his home at 1113 Riga Street in Marion, Indiana. Police came to the neighborhood in response to reports of shots having been fired. When they arrived, they were directed to Pettiford's house by a crowd of bystanders. Autumn Deloporte told the police that only her two children were in the house. The children came out of the house, and she persistently denied that anyone else was in the house. Nevertheless, witnesses told the police that the person with the gun had entered the house and not left. While continuing to

question Deloporte, the police saw some unknown person peak out from around a corner in the living room. With their guns drawn, the police arrested that person - who was subsequently identified as the plaintiff in this case: Rudell Pettiford.

Deloporte refused to consent to a search of the house, so the police secured the residence and obtained a warrant to search it. During the search the police found various things including: a handgun and ammunition, 144 grams of marijuana, 2 digital scales, a roller, baggies, and $960 in cash. "Pettiford is suing each defendants for illegal search and seizure, and false arrest . . .." DE 1 at 2.

DISCUSSION

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, the court must review prisoner complaints pursuant to 28 U.S.C. § 1915A. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

Pettiford names nine defendants and has also listed the Marion Police Department in the caption of this case. The police department is not a suable entity. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Therefore the Marion Police Department must be dismissed.

The only allegation that Pettiford makes against Chief David Gilbert is that he is in charge of the department. However, "[t]he doctrine of respondeat superior can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiffs' constitutional rights." *Chavez v. Illinois State*

*Police*, 251 F.3d 612, 651 (7th Cir. 2001). Here, where the subordinates have not violated his rights, there is absolutely no basis for liability and Chief David Gilbert must be dismissed.

The other eight officers were involved in various aspects of the search, seizure, and arrest described above. However, because none of the events described state a claim, they will (for convenience) merely be described as the police.

Pettiford alleges that he was wrongly arrested as a result of racial profiling. "Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011). However, in order to state a claim, Pettiford must plausibly allege that the police "acted or failed to act with a nefarious discriminatory purpose, and discriminated against [the plaintiff] because of her membership in a definable class" *McPhaul v. Board of Com'rs of Madison County*, 226 F.3d 558, 564 (7th Cir. 2000) (citations, quotation marks and brackets omitted); *see also Sow*, 636 F.3d at 303. Here, Pettiford has not alleged any factual basis from which a discriminatory animus could be plausibly inferred. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When the police arrested Pettiford, they were not looking for someone of a particular race – they were not profiling. They were looking in a house where witnesses said that a person with a gun had fled. They were talking to a woman who was familiar with the house[1] who repeatedly told them that no one was there. Based on the description of events, Pettiford was arrested after he stuck his head around the corner in the living room. Nothing about the described events contains any hint of racial or discriminatory intent. Based on the facts presented, it is not plausible that any of these defendants are liable to Pettiford for racial profiling.

To prevail on his false arrest claim, Pettiford must plausibly allege that he was arrested without probable cause. *See Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011). However, the facts alleged demonstrate that the police had probable cause to arrest Pettiford. "Probable cause for an arrest exists if, at the moment the arrest is made, the facts and circumstances within the officer['s] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." *Hughs v. Meyer*, 800 F.2d 967, 969 (7th Cir. 1989). Here, there had been gun shots fired in the neighborhood shortly before the police arrived. Witnesses saw a man with a gun run into the house. Deloporte stated that no

---

[1] Based on the description provided, it is unclear whether she and her children lived in the house, but since her children were inside and she repeatedly said that no one else was in the house, it is clear that she was familiar with it.

one (besides her children) had been or were in the house. Then Pettiford peaked his head around the corner of the living room. Based on these facts, the police had probable cause to believe that Pettiford was the man with the gun who had fled into the house and that he had been involved in the shooting in the neighborhood. Thus, Pettiford does not state a claim for having been falsely arrested.

Pettiford alleges that the police performed an illegal protective search of the house without a warrant. Pettiford does not allege that the police did more than a cursory sweep through the house after they arrested him and before they obtained a warrant to conduct a full search.

> In [*Maryland v.*] *Buie*[, 494 U.S. 325 (1990)], the Supreme Court recognized an exception to the warrant requirement for a protective sweep accompanying an in-home arrest. The Court held that when the police arrest an individual at his home, they may conduct a limited search of the premises without a warrant and without probable cause if there are articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*United States v. Arch*, 7 F.3d 1300, 1303 (7th Cir. 1993) (quotation marks and citation omitted). Here, the police were responding to a shooting in the neighborhood and Deloporte either did not know who was in the house or had lied to conceal who was there. Either way, the police clearly had justification for conducting a protective

sweep of the house after arresting Pettiford. *See Leaf v. Shelnutt*, 400 F.3d 1070, 1088 n. 22 (7th Cir. 2005).

Pettiford alleges that the search of the house and the seizure of items from the house was illegal. Other than saying that it was a violation of an unspecified (and undescribed) police department policy, he does not describe why searching the house with a warrant (see DE 1 at 22-23) was illegal. Neither does he allege that any of the seized items were outside the scope of the warrant. Violations of police department policy, even if true, do not state a claim under 42 U.S.C. § 1983. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006) ("In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law.")

Pettiford argues that the police "failed to file a supporting affidavit for the search warrant . . .." DE 1 at 9. It appears that he makes this argument because the box on the warrant for "an affidavit for search warrant was filed" was left unchecked. DE 1 at 22. However, the other box is checked. It indicates that "sworn testimony was presented to the court." *Id.* There is no constitutional requirement that a court only issue a warrant based on a written affidavit. *Cf.* Federal Rules of Criminal Procedure 4.1(a) ("A magistrate judge may consider information communicated by telephone or other reliable electronic means when reviewing a

complaint or deciding whether to issue a warrant or summons.") and Indiana Code 35-33-5-8 (Authorizing issuance of a warrant upon sworn testimony and without an affidavit.)

In an attempt to challenge the legitimacy of the warrant, Pettiford alleges that the judge "failed to place his signature on the search warrant return that orders disposition of property seized." DE 1 at 10. While is it unclear why the copy of the return that Pettiford submitted was not signed by the State court judge and also unclear whether the original has ever been signed, it is clear that nothing about the return could create liability here. In *Malley v. Briggs*, 475 U.S. 335 (1986), "the Supreme Court held that an officer who relies on a subsequently invalidated warrant may be liable for § 1983 damages only if the warrant application was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Junkert v. Massey*, 610 F.3d 364, 369 (7th Cir. 2010). Here, nothing about how the return was processed has anything to do with the warrant application or the warrant itself. Moreover, nothing about the absence of a judicial signature on the return gives any hint that the warrant was in any way invalid.

Finally, Pettiford argues that the police should not have sought to have forfeited the $960 in cash that was seized from his residence because there were no "smoking devices, scales, and packaging bags located on [his] person" (DE 1 at 11); because there

is no evidence that the cash was linked to drug sales; and because it is a violation of Indiana law. However, the drug paraphernalia he mentions was (like the $960 cash and 144 grams of marijuana) found in his residence. He does not argue that these items are not his. But to the extent that he were to make that argument (or any other argument opposing the forfeiture), he would need to present it to the State court that is presiding over the forfeiture proceeding because it has exclusive jurisdiction over the $960 until the conclusion of that proceeding. *See United States v. $79,123.49*, 830 F.2d 94 (7th Cir. 1987). Finally, a violation of Indiana law (if true) is not a basis for a claim under § 1983 which requires the deprivation of a federal constitutional right. *See Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). Though the Fourteenth Amendment provides that State officials shall not "deprive any person of life, liberty, or property, without due process of law", the forfeiture proceeding provides Pettiford with due process. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.")

CONCLUSION

For the reasons set forth above, this case is **DISMISSED** pursuant to 28 U.S.C. § 1915A.

DATED: November 12, 2013          /s/RUDY LOZANO, Judge
                                  **United States District Court**